IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ROYAL WHITAKER, III and
SUSAN WHITAKER,

                        **Plaintiffs,**

v.                                           Case No. 24-2132-DDC-GEB

SELECT PORTFOLIO SERVICING,
INC.

                        **Defendant.**

## MEMORANDUM AND ORDER

This is a dispute about a loan agreement. Plaintiffs Royal Whitaker III and Susan Whitaker entered into the agreement when refinancing their home loan, secured by a mortgage, in 2003. After multiple transfers, defendant Select Portfolio Servicing, Inc. now holds the loan. On February 20, 2024, plaintiffs, who are spouses, filed suit in the District Court of Johnson County, Kansas. Doc. 1-1 at 3 (Pet.). In their Petition, plaintiffs allege defendant has levied excess charges under that loan agreement, charges which purportedly violate the Kansas Uniform Consumer Credit Code, Kan. Stat. Ann. §§ 16a-1-101 to -9-102. *Id.* at 8 (Pet. ¶¶ 43, 46).

Plaintiffs identify two forms of excess charges. *First*, plaintiffs allege that defendant seeks to exact a deferred amount under the loan agreement that constitutes an illegal excess charge—either because it is a balloon payment or because it rests on negative amortization. *Id.* at 5, 8 (Pet. ¶¶ 21, 43–45). *Second*, plaintiffs allege that the interest on the loan didn't accrue as a scheduled installment loan, but as a negatively amortized daily accrual loan. *Id.* at 5 (Pet.

¶ 18).  And so, they seek a refund of any unlawful charges under Kan. Stat. Ann. § 16a-5-201(3).  *Id*. at 8 (Pet. ¶ 46).  They also seek a penalty of $100 to $1,000 for any excess charges under Kan. Stat. Ann. § 16a-5-201(4).  *Id*. at 8–9 (Pet. ¶ 46).  In addition—or alternatively—they request a judgment declaring that the deferred amount constitutes an improper balloon payment, improper negative amortization, or otherwise cannot be accounted for, and so they needn't pay it.  *Id*. at 9 (Pet. ¶¶ 49–50).

Defendant removed the case to our court, alleging diversity jurisdiction under 28 U.S.C. § 1332.  Doc. 1 at 1–2.  Now, plaintiffs request remand.  Doc. 10.  They argue remand is appropriate because the amount in controversy doesn't exceed the jurisdictional minimum required under § 1332.  Doc. 11 at 2.  Defendant, in response, contends plaintiffs request an unspecified refund amount based on excessive interest charges which—given the total amount of interest on a loan of this size—puts the amount in controversy over the $75,000 threshold.  Doc. 14 at 4–5.  In reply, plaintiffs assert that defendant's Response improperly presents entirely new grounds for removal—and does so *after* the 30-day period allowing a party to amend a removal notice freely.  Doc. 16 at 2.  Plaintiffs also maintain that defendant has failed to establish—by a preponderance of the evidence—that the amount in controversy exceeds the requisite $75,000.  *Id*. at 3–6.  Finally, plaintiffs contend that defendant's flawed removal attempt entitles them to attorneys' fees.  *Id*. at 7.

This Order briefly addresses whether any defects in defendant's removal procedure necessitate immediate remand.  They don't.  The issue remains, then, whether the amount in controversy satisfies the jurisdictional minimum under § 1332.  The court concludes that defendant shoulders its burden—under a preponderance of the evidence standard—to demonstrate that there's at least $75,000 in controversy.  And so, the court denies plaintiffs'

Motion to Remand (Doc. 10). The court explains its decision below, starting with a brief overview of the facts.

I.  **Factual Background**

### *The Loan*

Plaintiffs' Petition alleges the facts this way. In July 2003, Royal Whitaker refinanced the loan financing the home he and his wife occupy. Doc. 1-1 at 4 (Pet. ¶ 4). As part of that process, he agreed to a "Loan Repayment and Security Agreement," which named him as borrower and Household Finance Corporation III as lender. *Id*. (Pet. ¶ 5). Household Finance later transferred the loan to Caliber Home Loans, who then transferred it to defendant. *Id*. at 5 (Pet. ¶ 19). Under the loan agreement, the principal amount, plus points, was $308,346.43. *Id.* at 4 (Pet. ¶ 7). The agreement required monthly payments of $2,256.10, accrued interest at 7.97% a year, and was subject to a term that could lower the interest rate by .25% as many as 12 times over the life of the 30-year loan. *Id*. (Pet. ¶¶ 7–9). At the time the loan was refinanced, plaintiffs took out a $308,436.43 mortgage on their Lenexa, Kansas property. *Id*. (Pet. ¶ 11).

### *The Deferred Amount*

The loan agreement provides that it's governed by the Kansas Uniform Consumer Credit Code at a rate permitted by Kan. Stat. Ann. § 16a-2-401. *Id*. (Pet. ¶ 10). During the period when Caliber Home Loans serviced the loan, plaintiffs "were alleged to be in default and faced imminent foreclosure." *Id*. at 5 (Pet. ¶ 20). In response, Caliber sought to modify the loan agreement to add $11,100.86 for unpaid interest and $45,735.00 for "other unpaid amounts." *Id*. (Pet. ¶ 21). Together, those figures created a $56,835.86 "deferred amount," due July 26, 2033— the date when the loan matures. *Id* at 5, 6 (Pet. ¶¶ 21, 29). On August 25, 2014, facing severe financial distress, Royal Whitaker signed the modification agreement. *Id*. at 6 (Pet. ¶ 24). Also, he attached an addendum questioning the reasons for the deferred amount. *Id*. (Pet. ¶¶ 24–27).

3

His addendum requested a breakdown of how Caliber had arrived at the deferred amount's total. *Id*. (Pet. ¶ 26). The addendum also provided that, if the deferred amount was calculated incorrectly, plaintiffs wouldn't owe it, despite the modification. *Id*. (Pet. ¶ 27). Caliber received the agreement and addendum on August 27, 2014. *Id*. (Pet. ¶ 25). Caliber never objected to the addendum's terms. *Id*. (Pet. ¶ 25).

Since requesting details about the deferred amount in the addendum, plaintiffs assert they haven't received a satisfactory accounting of the deferred amount. *Id*. at 6–7 (Pet. ¶¶ 28–31). They continue to challenge it as improper or incorrect. *Id*. at 7 (Pet. ¶ 32). Plaintiffs allege, on information and belief, that the deferred amount arose from an accounting error, incorrect late fees or finance charges, or interest accrued using negative amortization. *Id*. (Pet. ¶ 32). Defendant maintains the deferred amount still outstanding is $56,835.86. *Id*. (Pet. ¶ 33).

### *The Excess Interest Charges*

Plaintiffs also allege that interest on the loan "did not accrue as a scheduled installment loan but rather as a negatively amortized daily accrual loan from July 22, 2003, through an unspecified date[.]" *Id*. at 5 (Pet. ¶ 18). Given these alleged improper interest charges, plaintiffs' prayer for relief asks the court to order defendant "to refund any charges paid in excess of what is or was legally permissible[.]" *Id*. at 10 (Pet. ¶ A). That is, to the extent defendant applied plaintiffs' installment payments to interest accruing as a daily accrual loan instead of interest accruing as a scheduled mortgage loan, plaintiffs demand a refund of the difference. Doc. 16 at 3. And plaintiffs allege defendant executed such improper interest payments from the initial date of the loan through some unknown end date. Doc. 1-1 at 4 (Pet. ¶ 4) (indicating start date of loan as July 22, 2003); *id.* at 5 (Pet. ¶ 18) (indicating end date of alleged daily accrual loan as "unspecified").

## II.   Procedural History

Plaintiffs filed their Petition in the District Court of Johnson County, Kansas, on February 20, 2024. Doc. 1-1 at 3 (Pet.) (showing Petition filed with Clerk of the District Court, Johnson County, Kansas at 11:46am on 02/20/24). On April 8, 2024, defendant removed the case to the United States District Court for the District of Kansas.[1] Doc. 1. In its Notice of Removal (Doc. 1), defendant asserted that 28 U.S.C. § 1441 and § 1446 authorized removal, and that federal jurisdiction is proper under 28 U.S.C. § 1332. *Id*. at 2. Defendant alleged the parties are completely diverse: plaintiffs are Kansas citizens and defendant is a Utah corporation with its principal place of business in Salt Lake City, Utah. *Id*. And defendant asserted that the amount in controversy exceeds $75,000. *Id*. In their remand motion, plaintiffs don't contest the diversity of the parties' citizenship. Doc. 11 at 1. But they claim the amount in controversy doesn't exceed $75,000, and that federal jurisdiction is therefore improper. *Id*. at 1–2. The court takes up plaintiffs' Motion to Remand (Doc. 10), next.

## III.   Motion to Remand (Doc. 10)

Plaintiffs move to remand, asserting that defendant hasn't alleged plausibly that the amount in controversy exceeds the $75,000 jurisdictional minimum. *Id.* at 3. Defendant's Notice of Removal alleges simply that "[p]laintiff's Complaint seeks damages in excess of $75,000." Doc. 1 at 2. Plaintiffs contend that even by "making speculative assumptions and engaging in the most liberal reading of the petition, the maximum amount in controversy that can be determined without pure speculation is $56,835.86"—the deferred amount. Doc. 11 at 3. And so, plaintiffs argue, their Petition demands roughly $20,000 less than the jurisdictional

---

[1]   Defendant alleges plaintiffs served the Petition on March 18, 2024. Doc. 1 at 1. By removing the case 21 days later, defendant complied with the time limit imposed by the removal statute. *See* 28 U.S.C. § 1446(b)(1) (requiring notice of removal within 30 days after service).

amount-in-controversy requirement, necessitating remand. *Id*. at 4. What's more, plaintiffs contend that defendant—when challenged—has failed to establish by a preponderance of the evidence that the amount in controversy exceeds $75,000. *Id.* at 5.

### A.      Legal Standard

The defendant in a civil, state-court action may remove a case to federal district court when the federal court has original jurisdiction over the action. 28 U.S.C. § 1441(a). Federal district courts have original jurisdiction over cases in diversity, that is, cases (1) between citizens of different states in which (2) the amount in controversy, excluding interest and costs, exceeds $75,000. 28 U.S.C. § 1332(a). But a federal court must remand the case to state court if it lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). "The removing party has the burden to demonstrate the appropriateness of removal from state to federal court." *In re Baby C v. Price*, 138 F. App'x 81, 83 (10th Cir. 2005) (citation omitted).

In a removal notice asserting diversity jurisdiction, the defendant must allege plausibly that the amount-in-controversy requirement is met. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). The standard for a defendant's "short and plain statement of the grounds for removal" under § 1446(a) isn't any higher than the standard for a "short and plain statement" under Rule 8(a)(2), which sets out the pleading standard. *See id.* at 87. By using the same language, Congress intended "to clarify that courts should 'apply the same liberal rules [to removal allegations] that are applied to other matters of pleading.'" *Id*. at 87 (brackets in original) (quoting H.R.Rep. No. 100–889, p. 71 (1988)). "Although courts sometimes have said that the requirements of the jurisdictional statement are strict, and that a 'mere conclusion' is insufficient, the better rule is that detailed grounds for removal need not be set forth in the notice." 14C Charles Alan Wright, Arthur R. Miller, Joan Steinmann et al., Federal Practice and

Procedure § 3733 (Rev. 4th ed. July 2024 Update). So, "a defendant's notice of removal . . . does not need to describe or provide evidence of the amount in controversy." *Id.* (citing *Dart*, 574 U.S. 81). "[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart*, 574 U.S. at 87.

Once the amount in controversy is disputed, however, defendant's burden sharpens. Section "1446(c)(2)(B) instructs: Removal is proper on the basis of an amount in controversy asserted by the defendant if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 88 (quotation cleaned up). "To satisfy the preponderance standard, a party must show a reasonable probability that the [amount in] controversy exceeds [$75,000]." *Owens v. Dart Cherokee Basin Operating Co.*, No. 12-4157-JAR-JPO, 2015 WL 7853939, at *3 (D. Kan. Dec. 3, 2015) (internal quotation marks and citation omitted). Put another way, the defendant must demonstrate the possibility that an amount beyond the jurisdictional minimum is "in play." *McPhail v. Deere & Co.*, 529 F.3d 947, 955 (10th Cir. 2008); *see also Hammond v. Stamps.com, Inc.*, 844 F.3d 909, 912 (10th Cir. 2016) ("[A] party seeking federal jurisdiction [must] show . . . that a fact finder might legally conclude that damages exceed the statutory amount." (quotation cleaned up)).

### B.      Analysis

Here, defendant alleged the requisite amount in controversy in its Notice of Removal. *See* Doc. 1 at 2. The court may accept such an unadorned allegation at the notice stage. *See Dart*, 574 U.S. at 87. Once challenged, however, defendant's burden elevates, requiring defendant to establish the amount in controversy by a preponderance of the evidence. *See id.* at 88. To shoulder that burden here, defendant clarified its removal argument in its Response (Doc.

14). Defendant's Response contends that the amount in controversy exceeds $75,000 because—in addition to the deferred amount and statutory penalty—plaintiffs seek a refund for an unspecified amount. Doc. 14 at 2. That is, defendant agrees that the sum quantified in the Petition—$57,835.86 (the deferred amount plus a $1000 statutory penalty)—is in controversy. *Id*. But it adds that plaintiffs' demand will exceed $75,000 after accounting for the refund of interest paid beyond what is or was unlawful under the Kansas Consumer Credit Code. *Id*. at 4. Defendant explains that a simple amortization of the loan agreement's principal, based on its starting interest rate, would equal $429,009.50. *Id.* An interest calculation totaling in the hundreds of thousands of dollars, defendant argues, suggests it's more likely than not that the amount in controversy will exceed $75,000. *Id.* at 4–5. In other words, plaintiffs' request for an unspecified refund amount of such a large interest calculation necessarily bridges the gap between the quantified sum and the jurisdictional threshold. *Id*. at 4–5.

Having outlined the parties' arguments, the court addresses, below, whether defendant's Response suffices to demonstrate—by a preponderance of the evidence—that more than $75,000 is "in play." *McPhail*, 529 F.3d at 955. But first, the court takes up a threshold issue raised by plaintiffs—whether defendant's Response impermissibly adopts new grounds for removal after the removal period.

### 1. New Grounds for Removal

Plaintiffs contend that defendant altered its removal basis *after* the 30-day period for removal, making it untimely. Doc. 16 at 2. According to plaintiffs, the removal basis defendant proffered in its Response is entirely different from the one defendant asserted in the Notice of Removal. *Id*. Such new grounds, they contend, are impermissible. *Id.*

8

Plaintiffs' cited legal principle is correct. After the 30-day removal period, "defendants generally may not add completely new grounds for removal or furnish missing allegations, even if the court rejects the basis for removal originally offered." *Phelps Oil and Gas, LLC v. Noble Energy Inc.*, No. 23-1243, 2023 WL 6121016, at *3 (10th Cir. Sept. 19, 2023) (internal quotation marks and citation omitted). *Phelps Oil* also provides that, after the removal period, a defendant may amend a removal notice for "'technical changes, such as the exact grounds underlying diversity jurisdiction.'" *Id.* (quoting *Wood v. Crane Co.*, 764 F.3d 316, 323 (4th Cir. 2014)). To provide "new grounds" for jurisdiction means that the defendant alleged one ground, such as federal-question jurisdiction—and then, after the 30-day amendment period had expired—tried to raise a new ground, *e.g.*, diversity. *See A.L. ex rel. Luchsinger v. Pitts*, No. 21-cv-03481-CMA-STV, 2022 WL 3593739, at *3 (D. Colo. Aug. 23, 2022).

Here, defendant didn't assert "new grounds" for removal. Defendant's Notice of Removal (Doc. 1) and Response (Doc. 14) maintain consistently that removal is based on diversity jurisdiction. Doc. 1 at 1; Doc. 14 at 1. Defendant alleged in its Notice of Removal that the amount in controversy supported diversity jurisdiction. Doc. 1 at 2 ("Here, Plaintiff's Complaint seeks damages in excess of $75,000."). After plaintiffs disputed that allegation, defendant then fleshed out its reasoning, explaining how the Petition's allegations satisfy the jurisdictional minimum. *See* Doc. 14 at 3–5. In so doing, defendant didn't supply a wholly "missing" allegation. *Phelps Oil*, 2023 WL 6121016 at *3. Instead, it bolstered a pre-existing allegation by providing a theory explaining the "exact grounds underlying diversity jurisdiction." *Id.* (quotation cleaned up) (finding addition of "alternative theory" that both original complaint and amended complaint supported jurisdiction "amounted to nothing more than a permissible

9

technical change"). Defendant's Response thus clears plaintiffs' impermissible-new-grounds challenge.

But a distinct and significant hurdle remains. Defendant still must demonstrate by a preponderance of the evidence that the amount in controversy meets the jurisdictional minimum. The court approaches that hurdle, next.

### 2. Amount in Controversy by a Preponderance of the Evidence

Once a party challenges an amount-in-controversy allegation, a defendant seeking to remain in federal court "is required to prove jurisdictional facts by a 'preponderance of the evidence' such that the amount in controversy may exceed $75,000." *McPhail*, 529 F.3d at 953 (quoting *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001)). Defendant may prove facts supporting diversity jurisdiction using (non-exclusively):

- contentions, interrogatories, or admissions from state court;
- calculations based on allegations in the complaint;
- the plaintiff's informal estimates and/or settlement demands;
- affidavits about the cost of meeting the plaintiff's demands from employees or experts.

*Id.* at 954 (quoting *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541–42 (7th Cir. 2006)). Relevant here, "the defendant may rely on an estimate of the potential damages from the allegations in the complaint." *Id.* at 955. That is, a "complaint that presents a combination of facts and theories of recovery that may support a claim in excess of $75,000 can support removal." *Id.* "The amount in controversy is not proof of the amount the plaintiff will recover. Rather, it is an estimate of the amount that will be put at issue in the course of the litigation." *Id.* at 956. In other words, "the question at this stage in the proceedings isn't what damages the plaintiff will *likely* prove but what a factfinder *might* conceivably lawfully award." *Hammond*, 844 F.3d at 912 (emphasis in original).

In *Hammond*, our Circuit concluded that even if plaintiff's estimated damages were factually improbable, legally possible damages sufficed at such an early stage in the dispute. *Id.* at 913. That's because "a more aggressive inquiry into the likelihood of success on the merits would invite delays and costs more appropriately reserved for adjudicating the merits than choosing the forum." *Id.* What's more, that inquiry would "force the proponent of jurisdiction to argue against himself, tasking him with the job of proving his own likely liability[.]" *Id.*

Here, plaintiffs' Petition leaves sufficient wiggle room for the amount in controversy to reach $75,000. Again, both parties accept an uncontested and defined amount in controversy of $57,835.86—a figure that represents the deferred amount plus a potential $1000 statutory penalty. *See* Doc. 1-1 at 5, 7 (Pet. ¶¶ 21, 33–35) (identifying deferred amount totaling $56,835.86); *id.* at 8–9 (Pet. ¶ 46) (identifying statutory penalty of "not less than $100 or more than $1,000" recoverable under Kan. Stat. Ann. § 16a-5-201(4)). But the Petition also alleges that plaintiffs may have paid an unspecified amount of improper interest, in addition to that deferred amount. *See* Doc. 1-1 at 5 (Pet. ¶ 18) ("It is believed that interest did not accrue as a scheduled installment loan but rather as a negatively amortized daily accrual loan from July 22, 2003, through an unspecified date, until it was accrued as a scheduled mortgage loan."). And this unspecified refund amount makes its way into plaintiffs' prayer for relief. *Id.* at 10 (Pet.) ("Plaintiffs request that this Court enter judgment in favor of the Plaintiffs and against the Defendant . . . By ordering the Defendant to refund any charges paid in excess of what is or was legally permissible[.]").

Defendant latches onto these unspecified refund allegations in the Petition, arguing that the potential refund amount puts more than $75,000 easily "in play." *See McPhail*, 529 F.3d at 955. And Tenth Circuit precedent allows defendant to rely on just such an "estimate of the

potential damages from the allegations in the complaint." *Id.* Recall that defendant alleges the potential for $429,009.50 in interest on a simple amortization of the loan agreement's principal amount. Doc. 14 at 4. Defendant arrived at this interest calculation utilizing the Petition's allegations about the principal balance of the loan and its annual interest rate. *Id.* (citing, *e.g.*, Doc. 1-1 at 4 (Pet. ¶ 7) ("The Loan Agreement specifies that the principal balance owed on the loan was $308,346.43 after adding 'points,' with interest accruing at a 'contract rate' of 7.970% per annum.")). Defendant suggests this amount constitutes the "value of the object of the litigation." *Id.* And, defendant contends, the demand for a refund of some portion of that amount lobs the potential amount in controversy over the threshold. *Id.* at 4–5.

Plaintiffs, for their part, maintain they've never indicated they're suing for *all* interest possibly accrued under the loan (*i.e.*, defendant's "simple amortization" interest amount). Doc. 16 at 3–4. Instead, plaintiffs assert, they just sue for over-charges they already paid when "their loan was treated as a daily accrual loan for some time . . . period[] unknown." *Id.* at 4. And plaintiffs point the finger at defendant, arguing defendant possesses the necessary records to calculate the precise "amount that [p]laintiffs actually paid in interest that may be in dispute[.]" *Id.* at 5.

But plaintiffs' finger-pointing implicates the very reason the Tenth Circuit limits jurisdictional tests—to avoid forcing "the proponent of jurisdiction to argue against himself[.]" *Hammond*, 844 F.3d at 913. That is, plaintiffs suggest defendant should calculate interest amounts it allegedly charged that violate the Kansas Uniform Consumer Credit Code. In so suggesting, plaintiffs ignore their own obligation to "provide sufficient allegations." *Armour v. Transamerica Life Ins. Co.*, No. 10-2136-EFM, 2010 WL 4180459, at *4 (D. Kan. Oct. 20, 2010). In a similar remand context, *Armour* explained that "[d]efendant is not required to guess

12

from [p]laintiff's complaint which specific [transactions] are at issue." *Id.*; *see also McPhail*, 529 F.3d at 955 ("[A] plaintiff cannot avoid removal merely by declining to allege the jurisdictional amount. This would [frustrate] the purpose of diversity jurisdiction, which is, after all, to protect the out-of-state defendant."). Even more problematic, requiring defendant here to calculate the implicated interest amounts would result in defendant "proving his own likely liability"—a result our Circuit authority seeks to avoid. *Hammond*, 844 F.3d at 913. Instead, our Circuit counsels district courts to focus "on the *legally possible*" not the *"factually probable."* *Id.* (emphasis in original).

So, the court must decide what amount is legally possible here. The parties agree that $57,835.86 is in controversy. This amount leaves a gap of $17,164.14 to reach the jurisdictional threshold of $75,000. Defendant contends plaintiffs' potential recovery of the unspecified refund amount could bridge that gap. What's more, Kansas law requires the court to double such a refund amount. Kan. Stat. Ann. § 16a-5-201(3) ("A consumer is not obligated to pay a charge in excess of that allowed by this act, and if the consumer has paid an excess charge the consumer has a right to a refund of twice the excess charge."). So, if plaintiffs were to recover around $8,600 (or more) in excess charges—an amount the statute requires the court to double in recovery—the amount in controversy would satisfy the $75,000 jurisdictional threshold.

To review, defendant has presented a calculation based on plaintiffs' allegations in their Petition—an approach our Circuit has deemed appropriate to establish the amount in controversy. *See McPhail*, 529 F.3d at 954. And defendant has calculated that the total interest due on the loan totals in the hundreds of thousands of dollars. Doc. 14 at 4. To be sure, not all of that interest is at issue—only excess charges are in play. Even so, only about 2% of

13

defendant's estimated interest sum must be in controversy to reach the jurisdictional minimum.[2] Defendant, at this stage, simply has to show "what a factfinder *might* conceivably lawfully award." *Hammond*, 844 F.3d at 912. If that amount surpasses $75,000—"even if it is highly improbable that the Plaintiffs will recover the amounts Defendants have put into controversy"—that's enough. *Id.* (quotation cleaned up). Defendant here identifies the large sum of total interest due, emphasizes that plaintiffs didn't specify a portion of the interest allegedly in excess, and implies that even a small at-issue portion of that large sum would support the diversity jurisdiction threshold. Doc. 14 at 4–5. The court thus concludes defendant's calculation demonstrates it is more likely than not that the amount in controversy surpasses the jurisdictional minimum.

### 3. Legal Certainty

Once defendant has shouldered his preponderance-of-the-evidence burden, plaintiffs' only chance for success on a remand motion requires a legal certainty that the dispute is less than $75,000. Our Circuit has clarified that when defendant's "estimate has been made—and contested factual allegations that support the estimate have been established . . . the case stays in federal court unless it is legally certain that the controversy is worth less than the jurisdictional minimum."[3] *McPhail*, 529 F.3d at 954 (quoting *Meridian Sec.*, 441 F.3d at 542). In other

---

[2] The court reached this 2% figure by dividing $8,600 (the amount needed to reach the jurisdictional minimum on the excess-charges theory alone) by $429,009.50 (defendant's estimate of the total interest due on the loan). In so doing, the court doesn't endorse defendant's estimate as precise. Instead, it seeks only to demonstrate that the possibility of disputed interest payments on such a large loan reaching $8,600 or more is high. And possibility determines a remand amount-in-controversy dispute. *See Hammond*, 844 F.3d at 913 ("The problem is that in applying the law to the facts the court proceeded to employ a more demanding test than the law allows, mistakenly focusing not on the *legally possible* but the *factually probable*. And that is an error of law we are not free to disregard." (emphasis in original)).

[3] The omitted language here refers to a jurisdictional hearing. Plaintiffs here never requested a hearing. And our court has decided motions to remand without one when "its unclear what evidence [the parties] believe will be uncovered or presented" or when the court isn't "convinced that a hearing would

words, once a defendant adduces facts underlying federal jurisdiction, it "is entitled to stay in federal court unless it is 'legally certain' that less than $75,000 is at stake. If the amount is uncertain then there is a potential controversy, which is to say that at least $75,000 is in controversy in the case." *Id.*

Plaintiffs fall far short of legal certainty here. Instead of trying to establish that the amount in controversy is less than $75,000, plaintiffs simply argue that defendant hasn't shouldered its burden. Doc. 16 at 3–5. That's it. Plaintiffs proffer no evidence or argument to prove their claims certainly total less than $75,000. And they would have a hard time doing so.

*First*, as discussed above, the unspecified refund amount likely pushes the amount in controversy across the jurisdictional threshold, given the size of the loan. But there's more. *Second*, although neither party addressed it, plaintiffs' Petition also requests attorneys' fees under the Kansas Uniform Consumer Credit Code. Doc. 1-1 at 11 (Pet. ¶ F.). Under Kan. Stat. Ann. § 16a-5-201(8), Kansas law requires the court to "award to the consumer the costs of the action and to the consumer's attorneys their reasonable fees" if a consumer proves that its creditor violated any part of the Uniform Code. When a state statute imposes payment of a party's attorneys' fees, those fees are "in controversy" for the purposes of the federal diversity jurisdiction statute. *Mo. State Life Ins. Co. v. Jones*, 290 U.S. 199, 202 (1933); *Woodmen of World Life Ins. Soc'y v. Manganaro*, 342 F.3d 1213, 1218 (10th Cir. 2003) (concluding court should consider statutory attorneys' fees in assessing the jurisdictional threshold). "The Supreme Court has long held that when a statute permits recovery of attorney's fees a reasonable estimate may be used in calculating the necessary jurisdictional amount in a removal proceeding based upon diversity of citizenship." *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1340 (10th

---

substantially assist the [c]ourt in deciding the motion to remand." *Saunders v. Big Blue Healthcare, Inc.*, 522 F. Supp. 3d 946, 966 (D. Kan. 2021).

15

Cir. 1998) (citing *Mo. State Life Ins.*, 290 U.S. at 202). Because the court must grant costs and reasonable attorneys' fees if plaintiffs prevail, those fees are necessarily in controversy in this matter. The court won't speculate now about what those fees might total. But attorneys' fees would only add to the amount in controversy. And that's the final nail in the coffin. Plaintiffs haven't come anywhere near establishing an amount in controversy under $75,000 to a legal certainty.[4]

## IV. Conclusion

Plaintiffs ask the court to remand this case because defendant's Notice of Removal was deficient in proving the requisite amount in controversy. But defendant needn't provide evidence of the amount in controversy in the removal notice—only upon a challenge. And, after challenging the amount in controversy, plaintiffs contend defendant didn't provide the evidence needed to overcome that challenge sufficiently. The court rejects plaintiffs' proposition. The calculation that defendant provided—based on the Petition's allegations—satisfies its burden to prove the amount in controversy likely surpasses the jurisdictional threshold. As a final blow, plaintiffs provide no evidence or argument to establish to a "legal certainty" that the jurisdictional amount falls below the minimum threshold. And so, the court denies plaintiffs' Motion to Remand (Doc. 10).

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs' Motion to Remand to State Court (Doc. 10) is denied.

**IT IS FURTHER ORDERED THAT** plaintiffs' request for attorneys' fees arising from defendant's removal is denied.

---

[4] Plaintiffs also ask for attorneys' fees incurred because of defendant's removal. When a federal court remands a case to state court, it may require the defendant to pay the costs and attorneys' fees resulting from the defendant's removal. 28 U.S.C. § 1447(c). But the court doesn't remand here. So, the court denies plaintiffs' request for attorneys' fees.

**IT IS SO ORDERED.**

**Dated this 29th day of January, 2025, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
